IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jewel La Dawn Wilson, | ) | Civil Action No.: 4:09-00087-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JMG Realty, Inc.; Michelle Myers; and | ) | |
| Julie Scarpelli; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff brought this action pursuant to 42 U.S.C. § 1981 and alleges that Defendants violated her civil rights by declining her application for rental of an apartment because of her race. This matter is before the Court with Defendants' [Docket Entry 17] Motion for Summary Judgment filed on December 30, 2009. The Court held a hearing on the matter on June 30, 2010. For the reasons set out below, the Court denies Defendants' Motion.

**Factual Background**

Defendant JMG Realty, Inc. ("JMG") manages an apartment complex in Myrtle Beach, South Carolina, known as Palmetto Pointe. Defendant Michelle Myers ("Myers") is JMG's Business Manager for Palmetto Pointe and Defendant Julie Scarpelli ("Scarpelli") is JMG's Assistant Business Manager for Palmetto Pointe. Brenda Ferrand ("Ferrand") is a former JMG Leasing Agent for the Palmetto Pointe property. This action concerns the rental application of Jewel La Dawn Wilson ("Plaintiff"), an African-American woman.

On August 27, 2008, Plaintiff called the Palmetto Pointe business office in response to a newspaper advertisement. Ferrand answered the telephone call and took down Plaintiff's name, phone numbers, address, and noted Plaintiff's interest in either a one-bedroom or two-bedroom

apartment. A week later, on September 3, 2008, Ferrand made a follow-up call to Plaintiff. That same day, Plaintiff came by Palmetto Pointe and Ferrand assisted Plaintiff in filling out a rental application. Rental Application [Docket Entry 17-2].

Ferrand informed Plaintiff that her information would be submitted to Resident Data, an independent third-party company, which would generate a report for JMG. On September 4, 2008, Ferrand submitted Plaintiff's application information to Resident Data. The "Residential Screening Analysis Report" ("Resident Data Report") came back "approved with conditions" and noted that "Applicant must pay an additional deposit." Resident Data Report [Docket Entry 17-3] at 1. While an application designated "approved with conditions" can ultimately be declined for multiple reasons, "approved with conditions means a higher deposit." Ferrand Depo. [Docket Entry 18-1] at 27, 39. The Resident Data Report listed two additional addresses for Plaintiff from the previous two years. *See* Resident Data Report at 2. Also, the Resident Data Report showed an outstanding $90 debt owed on a Wachovia checking account. *See id.* at 3. Based on the Resident Data Report, Ferrand informed Plaintiff that she would have to pay a higher deposit of $300.

On September 9, 2008, Ferrand received an employment verification from Plaintiff's employer that matched the earnings disclosed by Plaintiff on her rental application. *See* Employment Verification [Docket Entry 17-4]. Also on September 9, 2008, Ferrand received a rental verification from Plaintiff's mother, whom Plaintiff lived with at the time. The rental verification indicated that Plaintiff paid $100 rent weekly and had never been late with her rent. *See* Rental Verification [Docket Entry 17-5].

On September 10, 2008, Plaintiff paid the $300 deposit by delivering to the Palmetto

Pointe business office a MoneyGram payable to Palmetto Pointe. *See* MoneyGram [Docket Entry 17-8].

After receiving the Resident Data Report, Myers instructed Ferrand to obtain more information regarding Plaintiff's rental history with the Ivystone Apartments, an apartment address indicated on the Resident Data Report. Ferrand received the Rental Verification from Ivystone, and it indicated that Plaintiff "was just a[n] occupant at 213F." Ivystone Verification [Docket Entry 17-6]. It did not indicate any payment history, good or bad. *See id.*

Myers also instructed Ferrand to have Plaintiff pay the outstanding Wachovia balance and bring a payoff receipt to the Palmetto Pointe business office. Ferrand testified that Myers informed Ferrand that once Plaintiff brought in the Wachovia payoff receipt, Plaintiff would be "good to go." Ferrand Depo. at 57. Plaintiff paid the Wachovia balance and brought Ferrand the payoff receipt. *See* Receipt [Docket Entry 17-9]. On the day Plaintiff brought the receipt to Palmetto Pointe, Ferrand escorted Plaintiff to meet Myers. Ferrand testified that Myers and Scarpelli had been discussing that Plaintiff was from a "black neighborhood," had asked Ferrand whether Plaintiff was black, and that Myers wanted to meet Plaintiff to determine whether she was, in fact, black. Ferrand Depo. at 62-63. Ferrand also testified that, after Plaintiff brought in the receipt, Myers informed Plaintiff that "she was set." Ferrand Depo. at 68.

The decision to decline Plaintiff's rental application was made on Friday, October 3, 2008. Plaintiff's expected move-in date had been the following Monday, October 6, 2008.

According to Defendants, Myers was too busy to review Plaintiff's file because Myers was preparing a budget requested by the property owner. Myers instructed Scarpelli to fax Plaintiff's file to Lisa Van Horn in JMG's Atlanta headquarters. Van Horn is a training director

who also reviews rental applications when business managers cannot do so. Van Horn reviewed Plaintiff's rental application, without knowledge of Plaintiff's race, and decided to decline the application because Plaintiff had not established "a good rental history." Van Horn Aff. [Docket Entry 17-1] at 4. Thereafter, Van Horn authored an e-mail to Resident Data instructing Resident Data to note Van Horn's decision on Plaintiff's file, and copied Palmetto Pointe with her decision.

According to Plaintiff, Myers and Scarpelli made the decision to decline Plaintiff's rental application. Ferrand stated that "[Scarpelli] contacted Resident Data and had them to reverse [Plaintiff's] credit from approved with conditions . . . to declined." Ferrand Depo. at 69. Ferrand further testified that when Ferrand asked Scarpelli why she reversed the credit score, Scarpelli answered, "Myers told me to." *Id.* That same day, Van Horn sent an email to Resident Data instructing Resident Data to decline Plaintiff's rental application. On Monday, October 6, 2008, Scarpelli sent an e-mail to Van Horn regarding Plaintiff's file, which noted that Plaintiff's file was "the one you [Van Horn] changed for me [Scarpelli] on Fri." Scarpelli Email [Docket Entry 18-3] at 3.

Regardless, after the decision to decline Plaintiff's rental application was made, Scarpelli called Ferrand into her office and asked Ferrand to call Plaintiff and inform Plaintiff that her application had been declined. Ferrand went to talk to Myers about the decision, because Ferrand "had a big problem" with the decision. Ferrand Depo. at 70. Ferrand believes the decision was made based on Plaintiff's race. Ultimately, Ferrand quit her job around 4:15 p.m. that same afternoon.

## **Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of proving that summary judgment is appropriate. Once the movant makes the showing, however, the opposing party must respond to the motion with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322.

**Discussion**

Generally, a claim of intentional discrimination may be made "either through direct evidence of discriminatory intent, or by using the four-part *McDonnell Douglas* scheme which provides an inference of discriminatory intent." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "Courts have adapted the *McDonnell-Douglas* framework to housing discrimination claims." *Sullivan v. Hernandez*, 215 F. Supp. 2d 635, 638 (D. Md. 2002); *see also Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007) ("The familiar *McDonnell Douglas/Burdine* analysis applies to federal housing-discrimination claims . . . .").

Defendants argue that there is no direct evidence of discrimination in this case.[1] Even if this were true, Plaintiff still meets the *McDonnell Douglas* burden-shifting analysis to survive summary judgment. Under *McDonnell Douglas*, Plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). In order to establish a *prima facie* case of housing discrimination, Plaintiff must prove that: "(1) he or she is a member of a statutorily protected class; (2) he or she applied for and was qualified to rent or purchase certain property or housing; (3) he or she was rejected; and

---

[1] Plaintiff argues that Ferrand's testimony is direct evidence of racial discrimination. *See* Resp. in Opp. at 13 ("Based on Ferrand's testimony, defendants' conduct was discriminatory on its face."). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995), *rev'd on other grounds,* 517 U.S. 308 (1996). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate constitute direct evidence of discrimination." *Signal v. Gonzales*, 430 F. Supp. 2d 528, 540 n.5 (D.S.C. 2006) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). "[T]his court has stated that [a]n example of direct evidence would be a piece of paper saying, 'discipline Thomas, she is black.'" *Signal*, 430 F. Supp. 2d at 540 n.5 (internal quotations and citations omitted). However, as stated above, regardless of whether direct evidence exists in this case, Plaintiff still survives summary judgment because she satisfies the *McDonnell Douglas* burden-shifting scheme.

(4) the housing or rental property remained available thereafter." *Sullivan*, 215 F. Supp. 2d at 638; *see also Lindsay*, 498 F.3d at 438-39.

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to produce a legitimate, non-discriminatory reason for rejecting Plaintiff's application. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see also Lindsay*, 498 F.3d at 439. This is merely a burden of production, not persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendants have met their burden by producing their legitimate, non-discriminatory reason, the sole remaining issue is "discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)). In other words, the burden shifts back to Plaintiff to show that Defendants' proffered non-discriminatory reason for rejecting Plaintiff was pretext for discrimination. *See Reeves*, 530 U.S. at 143. "That is, the plaintiff may attempt to establish that he [or she] was the victim of intentional discrimination, 'by showing that the [defendant's] proffered explanation is unworthy of credence.'" *Id.* (quoting *Burdine*, 450 U.S. at 256).

In the case at bar, Plaintiff has met her burden of establishing a *prima facie* case of housing discrimination; a burden which is "not onerous." *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995). Defendants do not dispute that Plaintiff meets elements one (1), three (3), and four (4) of a *prima facie* case of housing discrimination. Defendants argue, however, that Plaintiff has not shown that she meets element (2) two–that she was qualified to lease the Palmetto Pointe apartment. In so arguing, Defendants direct the Court to the Affidavit of Van Horn, in which Van Horn stated that "JMG requires that the applicant has

established a good rental history for two years prior to his or her application." Van Horn Aff. at 4. Van Horn further stated that based on her review of Plaintiff's file, Van Horn decided "to decline Ms. Wilson's application because she had not established a good rental history." *Id.* at 5. The Court notes that Defendants essentially assert this same argument as their legitimate, non-discriminatory reason for declining Plaintiff's rental application. *See* Motion for Summ. J. at 11. While "no good rental history" may have ultimately been Defendants' reason for declining Plaintiff's application,[2] the Court finds that Plaintiff has set forth sufficient evidence to show that she was, at the very least, "qualified"[3] to rent the property in question, even if her application was ultimately declined. Plaintiff initially filled out a rental application. *See* Rental Application. After Ferrand submitted Plaintiff's application information to Resident Data, the Resident Data Report came back "approved with conditions." Resident Data Report at 1. The Report indicated that Plaintiff "must pay an additional deposit." *Id.* Ferrand informed Plaintiff that she was "approved with conditions[;] which meant a higher deposit." Ferrand Depo. at 52. Thereafter, Plaintiff did, in fact, pay to Defendants a higher deposit of $300. *See* MoneyGram; Plaintiff Depo. [Docket Entry 18-2] at 48. Defendants additionally received Plaintiff's employment verification and two rental verifications. Myers requested that Plaintiff also pay off a $90 debt owed to Wachovia. *See* Myers Depo. [Docket Entry 17-14] at 10-11. Ferrand testified that Myers informed Ferrand that once Plaintiff brought in the Wachovia payoff receipt, Plaintiff would be "good to go." Ferrand Depo. at 57. Plaintiff paid the debt and brought in the receipt.

---

[2] A question of fact remains as to whether "no good rental history" served as Defendants' true reason for declining Plaintiff's rental application. *See supra* pp. 10-11.

[3] While the record establishes a list of reasons for which a rental application may ultimately be declined or rejected, Defendants fail to provide any evidence to establish guidelines or prerequisites for an individual to be considered "qualified" to rent by JMG.

8

*See* Plaintiff's Depo. at 77; Wachovia Receipt. Ferrand testified that on the date Plaintiff gave Myers the Wachovia payoff receipt, Myers informed Plaintiff that "she was set." Ferrand Depo. at 68. Based on the above evidence, the Court finds that Plaintiff has met her burden of establishing a *prima facie* case of housing discrimination.

Defendants have also met their burden of producing a legitimate, non-discriminatory reason for declining Plaintiff's rental application. As noted above, Defendants contend that they declined Plaintiff's rental application because Plaintiff had "no good rental history." Essentially, Defendants assert that they declined Plaintiff's rental application based on rental risk, not race.

Thus, the ultimate burden reverts to Plaintiff to establish by a preponderance of the evidence that Defendants' legitimate, non-discriminatory reason was not their true reason, but was pretext for racial discrimination. *See Reeves*, 530 U.S. at 143. Plaintiff argues that Defendants' reason for declining her rental application was pretext for racial discrimination, and that Myers and Scarpelli made the decision to decline her rental application on the basis of race after discovering that Plaintiff was black. Defendants, on the other hand, maintain that Van Horn made the independent decision[4] to decline Plaintiff's rental application for "no good rental history," and without knowledge of Plaintiff's race. The Court finds that genuine issues of material fact remain, such that a reasonable juror could ultimately find that Defendants

---

[4] As a matter of fact, Defendants argued the following their summary judgment motion:

> [Plaintiff] cannot establish that Defendants Myers or Scarpelli rejected [Plaintiff's] application. Wilson has pursued her claim against Myers and Scarpelli under the false assumption that Myers and Scarpelli made the decision when, in fact, Van Horn was the decisionmaker. For this reason alone, Defendants Myers and Scarpelli should be granted summary judgment.

Motion for Summ. J. at 10. However, because the Court ultimately concludes that issues of fact remain as to who was the actual decisionmaker, summary judgment on this basis should be denied.

9

intentionally discriminated against Plaintiff.

First, a genuine issue remains as to who actually made the decision to decline Plaintiff's rental application–Van Horn or Myers and Scarpelli. Van Horn stated that "[b]ased on [her] review of [Plaintiff's] file and the limited information available to [her], [Van Horn] used [her] best judgment, knowledge, and experience to decide to decline [Plaintiff's] application because [Plaintiff] had not established a good rental history." Van Horn Aff. at 5. Van Horn further averred that Plaintiff's file did not reveal Plaintiff's race and that Van Horn "reviewed [Plaintiff's] application while sitting in [Van Horn's] office in Atlanta." *Id.* Finally, Van Horn stated that, after making her decision, she emailed Resident Data and asked them to note her decision on Plaintiff's file. *Id.* Ferrand, on the other hand, testified that Myers and/or Scarpelli made the decision to decline Plaintiff's rental application. Ferrand stated that "[Scarpelli] contacted Resident Data and had them to reverse [Plaintiff's] credit from approved with conditions . . . to declined." Ferrand Depo. at 69. Ferrand further testified that when Ferrand asked Scarpelli why she reversed the credit score, Scarpelli answered, "Myers told me to." *Id.* Finally, to contradict Van Horn's statement that she independently made the decision to decline Plaintiff's rental application, Plaintiff submits as evidence an email from Scarpelli to Van Horn requesting a copy of the Adverse Action letter on Plaintiff's file and stating that "this is the one you [Van Horn] changed for me [Scarpelli] on Fri." Scarpelli Email at 3. Plaintiff argues that this email, and specifically the words "for me," "flies in the face of Van Horn's claim of independence" and shows that Myers and/or Scarpelli were involved in the decision to decline Plaintiff's rental application. Resp. in Opp. at 14. Because Plaintiff must show that "the reason proffered by [Defendants] was a pretext for discrimination on the part of [their] *relevant*

*decisionmakers*," the determination of the Defendants' actual decisionmaker may ultimately be determinative of this entire matter. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004). Accordingly, summary judgment is inappropriate because genuine issues of material fact remain as to who actually made the decision to decline Plaintiff's rental application.

Second, regardless of who made the actual decision to decline Plaintiff's rental application, questions remain as to Defendants' true and actual reason for declining the application. Plaintiff has submitted evidence that she argues shows that Defendants' proffered reason was merely pretext and that they actually declined her rental application on the basis of race. Ferrand testified that, after Plaintiff's application came back "approved with conditions[;] which meant a higher deposit," Myers and Scarpelli later "were talking about where [Plaintiff was] from. The street [Plaintiff was] from. . . . That it was a black neighborhood. And they asked [Ferrand] if [Plaintiff] was black." Ferrand Depo. at 52, 63-64. Ferrand also testified that Myers asked to see Plaintiff in person so that Myers could determine whether or not Plaintiff was black. *Id.* at 61. Ferrand further testified that, in her multiple years as an employee of JMG, Defendants made "racial comments" and watched black videos. *Id.* at 62. Ferrand stated that after Defendants determined Plaintiff was black, Scarpelli ultimately "contacted Resident Data and had them to reverse [Plaintiff's] credit report from approved with conditions . . . to declined." *Id.* at 69. Finally, Plaintiff contends that, even if Van Horn actually instructed Resident Data to decline Plaintiff's rental application, Scarpelli instructed Van Horn to do so. *See* Scarpelli Email at 3. On the other hand, Defendants, citing Van Horn's Affidavit,[5] contend that

---

[5] Van Horn stated the following in her Affidavit: "Based on my review of the file and the limited information available to me, I used my best judgment, knowledge, and experience to decline Ms. Wilson's application because she had not established a good rental history." Van Horn Aff. at 5. Van Horn further

11

their decision to decline Plaintiff's rental application was based on Plaintiff's "no good rental history," i.e., rental risk. Defendants also maintain that race did not play a factor in Van Horn's allegedly independent decision to decline Plaintiff's rental application. Van Horn stated the following in her Affidavit:

> I reviewed Ms. Wilson's application while sitting in my Atlanta office. The file contained no disclosure of Ms. Wilson's race and I did not know Ms. Wilson was African-American until she and Brenda Ferrand filed lawsuits alleging racial discrimination. Further, I live and work in Atlanta and have no knowledge of the socioeconomic makeup of "Dunbar Street" in Myrtle Beach, South Carolina or the reputation of that street or area.

Van Horn Aff. at 5. The Court finds that, based on the above evidence and taking such evidence in a light most favorable to Plaintiff, a reasonable juror could conclude that Defendants' true reason for declining Plaintiff's rental application was, in fact, her race. Accordingly, because questions of fact remain as to whether Defendants' proffered reason was actually pretext for racial discrimination or whether Defendants intentionally discriminated against Plaintiff, summary judgment should be denied at this stage.

## Conclusion

The Court has thoroughly reviewed the Motion, memoranda, and applicable law. For the reasons stated above, Defendants' [Docket Entry 17] Motion for Summary Judgment is hereby **DENIED**.

---

averred, "I authored an e-mail to my contact at Resident Data . . . and asked her to note my decision on [Plaintiff's application] [f]or the reason that the applicant had 'no good rental history.'" *Id*.

**IT IS SO ORDERED.**

                                              s/R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

Florence, South Carolina
July 29, 2010